IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| JULI LEWIS, individually )<br>and on behalf of the Heirs at Law )<br>of Darlene Lewis, deceased, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NORFOLK SOUTHERN RAILWAY )<br>COMPANY, )<br>)<br>Defendant. ) | No. 06-2724 STA-tmp |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Juli Lewis brought this wrongful death action alleging negligence on the part of Defendant Norfolk Southern Railway Corporation. Federal jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332(a)(1). Before the Court is Defendant's Motion for Summary Judgment, (D.E. # 40), filed on January 31, 2008. Plaintiff responded in opposition on April 17, 2008, (D.E. # 58). For the reasons set fort below, Defendant's Motion is **GRANTED**.

**BACKGROUND**

On October 25, 2005, between 5:00 and 6:00 p.m., Plaintiff and her mother, Darlene Lewis ("Decedent") left their home at 48 Shady Lane to walk to the Mapco Express located at 1559 Lamar Avenue. When Plaintiff and Decedent were walking back to their house, they attempted to cross over Norfolk Southern train number 16AAB26 which was parked on the tracks. Plaintiff successfully crossed the tracks by stepping over the coupling between two of the

1

railcars, but as Decedent attempted to cross, the train began to move. Decedent fell underneath the boxcar and was killed. Plaintiff denied hearing the train's whistle blow before it began moving, but stated that she only heard the train making screeching noises like it was going to move after Decedent had begun her attempt to cross between the train's boxcars.

## SUMMARY JUDGMENT STANDARD

Rule 56 (c) provides that a

> judgment . . . should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law.[1]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.[2] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[3] It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[4] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[5] Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

---

[1] Fed. R. Civ. P. 56(c); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[2] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[3] *Celotex*, 477 U.S. at 324.

[4] *Matsushita*, 475 U.S. at 586.

[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

party will bear the burden of proof at trial."[6] In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [the] asserted causes of action."[7] Finally, the "judge may not make credibility determinations or weigh the evidence."[8]

## ANALYSIS

In diversity cases, the federal courts are to apply the substantive law of the state as interpreted by the courts of the state.[9] In doing so, the court is to apply state law in accordance with the controlling decision of the state's highest court.[10] If the state's Supreme Court has not addressed the issue, the court is to predict the manner in which the state court would resolve the issue.[11]

### A. Duty of Care

Plaintiff and Defendant disagree as to the proper duty of care in this case. Defendant asserts that Plaintiff and Decedent were trespassers, and therefore owed a lesser duty of care. Plaintiff contends that she and Decedent were not trespassers and further argues that their legal status at the time Decedent was killed is not dispositive of the duty of cared owed by Defendant.

Under Tennessee law, a plaintiff may establish a cause of action under a negligence theory by showing (1) a duty of care owed to the plaintiff by the defendant; (2) conditions falling

---

[6] *Celotex*, 477 U.S. at 322.

[7] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[8] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[9] *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

[10] *Bailey Farms, Inc. v. NOR-AM Chem. Co.*, 27 F.3d 188, 191 (6th Cir. 1994).

[11] *Id.; Privette v. CSX Trans., Inc.*, 79 Fed. Appx. 879, 883 (6th Cir. 2003) (citing *Hines v. Joy Mfg. Co.*, 850 F.2d 1146, 1150 (6th Cir. 1988)).

below the appropriate standard of care which rises to the level of a breach of that duty; (3) an injury; (4) causation in fact; and (5) proximate, or legal, cause.[12] In this case, Plaintiff and Decedent entered onto the railroad tracks without permission, and Decedent was killed while she and Plaintiff were crossing the tracks. Thus, the Court finds that Plaintiff and Decedent were trespassers, and therefore, owed a lesser duty of care.

Under Tennessee law, the general rule as to liability of a landowner to a licensee or trespasser is to refrain from intentionally, willfully, or recklessly injuring him or her.[13] Plaintiff has not alleged that Defendant willfully or intentionally injured Decedent. Therefore, Defendant argues, and the Court agrees, in order to avoid summary judgment, Plaintiff would have to allege facts showing recklessness on Defendant's part. A person acts recklessly "when the person is aware of but consciously disregards a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise . . . ."[14] In her Complaint, Plaintiff does not allege that Defendant knew that she and Decedent were crossing the train at the time it began to move. Therefore, Defendant asserts that because it was unaware that Plaintiff and Decedent were on its property, it did not act recklessly. There is no evidence to suggest that the conductor and engineer of Defendant's train acted recklessly when the train began to move. Thus, the Court finds that absent an exception to the general rule, Defendant breached no duty of care to Plaintiff and Decedent.

---

[12] *Morris v. Wal-Mart Stores, Inc.*, 330 F.3d 854, 858 (6th Cir. 2003) (citing *McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891, 894 (Tenn. 1996)).

[13] *Chandler v. Massa*, 415 F.2d 560, 563 (6th Cir. 1969); *Yarbrough v. Potter*, 207 S.W.2d 588, 589 (Tenn. 1948).

[14] *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 891 (Tenn. 1992) (citing Tenn. Code Ann. § 39-11-302 (2008) (criminal definition of "reckless")); Restatement (Second) of Torts § 500 cmt. a (2008) ("For . . . reckless conduct, the actor must know, or have reason to know, the facts which create the risk.").

Although a railroad owes no duty to a trespasser except not to intentionally, willfully, or recklessly injure him,[15] Tennessee recognizes the "well-worn path" exception to this rule.[16] Under this exception, a railroad owes a limited duty to a trespasser when the railroad is aware that the public crosses the tracks at a particular location.[17] In order for a railroad to be liable under this exception, the railroad must 1) have acquiesced for a long period of time in public use of the premises; 2) it must have made the property defective without giving warning of its changed condition; and 3) the plaintiff's injuries must have occurred due to the defective condition.[18] Furthermore, this exception only applies when "there is a well-established, well-defined path, and [not when] people simply roam across and about an area in any and all directions haphazardly."[19] When these elements are proven, the railroad owes a duty of ordinary care to warn the public of the changed condition.[20] Furthermore, some courts have held that even when a foot path crosses railroad tracks, a person using the path when the tracks are occupied by a train is a trespasser and the exception does not apply.[21] Therefore, a railroad owes no duty to protect a pedestrian who is using a path in this manner as the railroad could not

---

[15] *Louisville & N.R. Co. v. Womack*, 173 F. 752 (6th Cir. 1909).

[16] *Harrison v. Southern Ry. Co.*, 215 S.W.2d 31 (Tenn. Ct. App. 1948).

[17] *Id.*

[18] *Id.* at 34.

[19] *Birdsong v. City of Chattanooga*, 319 S.W.2d 233, 236 (Tenn. 1958) (citing *Habina v. Twin City Gen. Elec. Co.*, 113 N.W. 586 (Mich. 1907)).

[20] *Harrison*, 215 S.W.2d at 35.

[21] *Shea v. Chicago, M., St. P. & P. R. Co.*, 10 N.W.2d 135 (Wis. 1943) (citing *Louisville & N.R. Co. v. Noble*, 96 S.W.2d 433 (Ky. 1936); (*Kaproli v. Cent. R. of New Jersey*, 143 A. 343 (N.J. 1928)). *See also Olsen v. Chicago, Milwaukee, St. Paul and Pacific R. Co.*, 301 N.W.2d 461, at *2 (Wis. Ct. App. 1980); *Anderson v. Green Bay & W. R.*, 299 N.W.2d 615, 617 (Wis. Ct. App. 1980).

reasonably anticipate or foresee such use.[22]

A Georgia case is illustrative of the limits of the well-worn path exception.[23] The plaintiff in that case was walking in an area frequented by the public when he was run over by a train.[24] He argued that the railroad was negligent in operating in an area where it knew the public frequently walked without maintaining a lookout or otherwise warning him of the approaching danger.[25] The court stated that although, the railroad was required to use ordinary care to anticipate the presence of and avoid injuring pedestrians when it allowed them to use its tracks as a pathway, the implied assent to the use of the tracks was subject to the railroad's prior right to the use of its tracks.[26] Therefore, the pedestrians were only able to use the tracks as a passageway when it was not occupied by the railroad.[27] The court found that under the circumstances, the plaintiff was on notice of the danger in which he placed himself.[28]

In this case, Plaintiff argues that there is a genuine issue for trial as to whether the area where she and Decedent were crossing constituted a well-worn path. To support her contention, she points out that Mr. Leon Freeman stated in his deposition testimony that he has observed trains blocking the crossing for periods longer than five minutes. Mr. Freeman also testified that he has observed individuals crossing over the stopped trains in the same manner in which

---

[22] *Shea*, 10 N.W.2d at 135 (Wis. 1943).

[23] *Howard v. August Southern R. Co.*, 65 S.E. 719 (Ga. App. 1909).

[24] *Id.* at 720.

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

Plaintiff and Decedent attempted to cross in the same area as Decedent was killed. In addition, Plaintiff testified in her deposition that she had observed other individuals crossing over standing trains at this location. Furthermore, Brandon Peebles, the conductor of the train involved in the incident, testified that he had observed people, on other occasions, in this area waiting for trains to pass.

Applying the elements of the well-worn path exception to this case, the Court finds that the exception does not apply. Regarding the first element, there is some evidence that the railroad acquiesced in the public's use of the area. Specifically, Plaintiff, Mr. Freeman, and Mr. Peebles indicated that they had observed individuals in the area. None of these individuals, however, testified that there was a specific, well-defined path that the public used. Rather, their testimony is to the effect that they had each observed individuals in the vicinity. Thus, it appears that the public did not cross on a definite path, but rather moved about the area randomly. The Court finds that this type of sporadic use is insufficient to establish a definite path which would raise the railroad's standard of care. Therefore, there was no well-worn path, and the exception does not apply.

The Court's analysis could end here, but the other elements of the well-worn path exception likewise cause it to be inapplicable in this case. For example, the second element of the exception also causes it to fail. There is no evidence that the railroad changed the property in a way to render its condition defective. The "dangerous condition" in question was simply that a train was stopped upon the tracks. The dangerous character of this situation was obvious and manifest to Plaintiff and Decedent, therefore, Defendant had no duty to warn of the dangerous condition. Finally, as discussed in more detail below, Decedent's injuries did not occur due to

the dangerous condition, but due to her own negligence. Thus the well-worn path exception is inapplicable to the present case.

Another exception to the general rule that a railroad has no duty to trespassers except to refrain from intentionally, willfully, or recklessly injuring them is the so-called "lookout ahead" rule.[29] Under this rule, a railroad has a duty "to keep a reasonable lookout for trespassers upon its track . . . ."[30] When an obstruction appears upon the tracks, the train must sound its horn, apply its brake, and employ every possible means to stop the train and prevent collision.[31] Thus, simply because a party is a trespasser does not preclude him or her from recovering for another party's negligence when injury could have been avoided by using ordinary care.[32] This rule has its limits, though. In *Preslar v. Mobile*, for example, the Tennessee Supreme Court held that a railroad did not owe a duty of care to prevent injury to a trespasser when the railroad employees were unaware that a piece of timber was projecting from a lumber car.[33] The court stated that the burden of compliance with the "lookout ahead" rule does not arise unless the person "appears on the track, or within striking distance of the track, as an obstruction."[34] Under Tennessee law, the phrase "upon the road" means "appearing upon the track or roadbed *in front of* the moving train .

---

[29] Tenn. Code Ann. 65-12-108 (3) (2007).

[30] *Belcher v. Tennessee Cent. Ry. Co.*, 377 S.W.2d 928 (Tenn. 1964) (quoting *Patton v. E. Tennessee, V. & G.R. Co.*, 15 S.W. 919 (Tenn. 1890)).

[31] Tenn. Code Ann. 65-12-108 (3).

[32] *Id.* at 81.

[33] *Preslar v. Mobile & O.R. Co.*, 185 S.W. 67, 68–69 (Tenn. 1916).

[34] *Id.* (citing *Cincinnati, etc. R. Co. v. Brock*, 178 S.W. 1115 (Tenn. 1915)).

8

. . ."[35] In another case, the Sixth Circuit held that a railroad owed only the general duty to do a trespasser no intentional wrong or injury, and that this duty only applied when the railroad was *aware* of the danger in which the trespasser stood.[36]

Plaintiff has presented no evidence to show that Defendant was aware of her and Decedent's presence upon the railroad track at the time Decedent was killed. Defendant's crew members testified that they did not see Plaintiff and Decedent prior to movement of the train. In fact, Plaintiff and Decedent were crossing *between* the boxcars of the train. Therefore, the fact that the train's crew was keeping a lookout *ahead* would not have prevented Decedent's death, as they could not have seen Plaintiff and Decedent from the viewpoint of looking forward. Therefore, Defendant did not owe Plaintiff a duty under the "lookout ahead" rule because Plaintiff and Decedent did not appear as an obstruction on the road in front of the train. Because there was no duty, there could likewise be no breach of duty.

The Court thus finds that the well-worn path exception does not apply, and that Defendant owed Plaintiff and Decedent no duty under the lookout ahead rule. Additionally, Plaintiff has failed to allege sufficient evidence that a reasonable jury could find that Defendant willfully, intentionally, or recklessly injured Decedent. Because there is no evidence of a breach of duty of care, there is no genuine issue of material fact for trial.

**B. Comparative Negligence**

Defendant argues that to the extent that Decedent was killed due to an impact with

---

[35] *Rush v. Illinois Cent. R. Co.*, 399 F.3d 705, 726 (Tenn. 2005) (citing *S. Ry. Co. v. Cradic*, 301 S.W.2d 374 (Tenn. 1956)) (emphasis added). *See also Curtis v. Louisville & N.R. Co.*, 232 F.109, 110 (6th Cir. 1916) ("It is the settled Tennessee construction of this statute that it is to be applied only when the person or other obstruction appears upon the track in front of the engine . . . .")

[36] *Kansas City, Ft. S. & M.R. Co. v. Cook*, 66 F. 115, 121 (6th Cir. 1895) (emphasis added).

Defendant's train, her death and all resulting damages were legally caused by her own negligence and her failure to exercise reasonable care in the presence of danger. Tennessee follows the modified comparative fault rule wherein a plaintiff who is forty-nine percent at fault can recover against a defendant who is fifty-one percent at fault, with the plaintiff's damages reduced in proportion to her negligence.[37] Therefore, a plaintiff's own negligence would not necessarily be a complete bar to recovery.[38] The adoption of this rule was due to considerations of fairness as "the contributory negligence doctrine unjustly allowed the entire loss to be borne by a negligent plaintiff, notwithstanding that the plaintiff's fault was minor in comparison to defendant's."[39]

Applying this rule to the case at hand, Plaintiff will still be barred from recovery. In order for a plaintiff to recover under the comparative fault doctrine, she must be less at fault than the defendant. In the present case, Plaintiff and Decedent crossed over a stopped train. Plaintiff testified that both she and Decedent knew this was dangerous. Thus, the proximate cause of Decedent's death was her failure to exercise ordinary care. As discussed above, Defendant was not negligent. Defendant owed only a duty to refrain from willfully, intentionally, or recklessly causing injury, and Defendant did so. Thus, Plaintiff may not recover, despite Tennessee's adoption of the comparative fault doctrine.

## C. Negligence *Per se*

Plaintiff alleges that Defendant's actions constituted negligence *per se* in that Defendant

---

[37] *McIntyre v. Balentine*, 833 S.W.2d 52, 58 (Tenn. 1992).

[38] *Id.*

[39] *Id.*

violated two local regulations and one state regulation. Specifically, Plaintiff alleges that Defendant violated Tennessee Code Annotated § 65-12-108 by failing to sound the train's horn prior to commencing movement. Additionally, Plaintiff alleges that Defendant failed to comply with Memphis City Ordinance § 12-80-1 which states that no railway shall park its train on the track for more than five minutes and § 12-80-13 which states that no railway shall park its train within 150 feet of a grade crossing. Defendant, on the other hand, asserts that it did not violate any statutes or ordinances. Defendant first asserts that the train did sound its horn prior to resuming movement. Next Defendant alleges that the train involved in the incident was stopped for less than five minutes as required by § 12-80-1. Finally, Defendant states that because Plaintiff and Decedent did not cross at a grade crossing, Memphis City Ordinance § 12-80-13 is irrelevant in this case.

### 1. Preemption

In addition to alleging that it was in compliance with all statutes and ordinances, Defendant states that even if it did not comply with the ordinances and statute, it is not liable because the state statutes and local ordinances are preempted by federal law. The Supremacy Clause of Article VI of the United States Constitution provides Congress with the power to pre-empt state law. The proper analysis to determine whether a state regulation is preempted is to determine whether Congress intended that a federal regulation supersede state law.[40] Under the preemption clause of the Federal Railway Safety Act ("FRSA"), a state regulation regarding railroad safety is permissible only when the Secretary of Transportation has not regulated, or when the state regulation is created in response to a local, as opposed to a national, safety

---

[40] *Norfolk & W. Ry. v. City of Oregon*, 1998 U.S. App. LEXIS 14909, at *8 (6th Cir. June 24, 1998) (citing *Louisiana Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 368–69 (1986)).

concern, provided the regulation does not conflict with federal law and does not place an undue burden upon interstate commerce.[41] A federal statute that calls for preemption of matters "relating to" the subject matter of that statute will preempt all "actions having a connection with or reference to" that subject matter.[42] Therefore, the first question in determining whether a challenged regulation relating to railroad safety is preempted by the FRSA, is whether there is a connection with or reference to railroad safety.[43] In *CSX Transportation, Inc. v. Easterwood*,[44] the United States Supreme Court "provided some guidance for determining whether a federal regulation covers the subject matter of a state requirement under the FRSA."[45] The Court stated that a state statute will be preempted "only if the federal regulations substantially subsume the subject matter of the relevant state law."[46] The federal regulation does not have to be identical, however, for preemption to apply.[47]

### a. Tennessee Code Annotated

Plaintiff asserts that Defendant violated Tennessee Code Annotated § 65-12-108 which requires a train to sound its whistle or bell on approaching a public crossing. Section 65-12-109 states that a violation of § 65-12-108 constitutes negligence *per se*. Defendant, on the other

---

[41] 49 U.S.C. § 20106 (2008); *CSX Transp., Inc. v. City of Plymouth*, 92 F. Supp. 2d 643, 649 (E.D. Mich. 2000) ("*Plymouth II*").

[42] *Plymouth I*, 86 F.3d at 629 (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992)).

[43] *Plymouth I*, 86 F.3d at 629 (citing *Morales*, 504 U.S. at 384).

[44] 507 U.S. 658 (1993).

[45] *Plymouth II*, 92 F. Supp. 2d at 650 (citing *Easterwood*, 507 U.S. at 665).

[46] *Easterwood*, 507 U.S. at 664.

[47] *CSX Transp, Inc. v. City of Plymouth.*, 283 F.3d 812, 817 (6th Cir. 2002) ("*Plymouth IIII*").

hand, argues that § 65-12-108 is preempted by the FRSA. Defendant further asserts that the statute does not apply in this case because Plaintiff and Decedent were not in the class of persons the statute was designed to protect.

In *CSX Transportation, Inc. v. City of Plymouth* ("*Plymouth II*"),[48] a Michigan district court held that the FRSA preempted a state blocked crossing statute because the state statute was viewed as regulating speed, length, and air brake testing, and the statute did not fall within the protection of the FRSA savings clauses.[49] The *Plymouth II* court held that because the FRSA regulations substantially subsume these areas, the first savings clause did not apply.[50] Regarding the second savings clause, the state statute was not necessary to eliminate or reduce an essentially local hazard because it applied throughout the state; therefore, it could not be saved by the second savings clause either.[51]

Title 49 section 222.21 of the Code of Federal Regulations, which is titled "When must a locomotive horn be used" states that between June 24, 2005, and December 15, 2006, a railroad had the option to sound the locomotive horn as required by state law or under this section.[52] Plaintiff points out that the accident that killed Decedent occurred on October 26, 2005, thus placing it within the time period addressed by this section. The plain language of § 222.21 indicates that the state statute was not preempted by the FRSA at the time of the accident. Thus the Court finds that the FRSA did not preempt § 65-12-108.

---

[48] *Plymouth II*, 92 F. Supp. 2d at 629

[49] *Id.* at 653–57.

[50] *Id.* at 657.

[51] *Id.* at 657–58

[52] 49 C.F.R. § 222.21 (2008).

13

This is not dispositive of the issue before the Court, however. Section 65-12-108 requires a train to sound its horn upon approaching every crossing beginning at one fourth of a mile from the crossing and again at short intervals until the train has passed the crossing.[53] Plaintiff asserts that there is a genuine issue for trial as to whether Defendant's train sounded its horn prior to commencing movement. The Court need not decide whether or not Defendant violated this statute by failing to sound its horn because the doctrine of negligence *per se* is not applicable here.

A plaintiff must prove three elements in order to recover on the basis of negligence *per se*.[54] First, she must show that the defendant violated a statute that "imposes a duty or prohibits an act for the benefit of a person or the public."[55] Second, the plaintiff must prove "that the injured party was within the class of persons whom the legislative body intended to benefit and protect by the enactment of that particular statue or ordinance."[56] Finally, the plaintiff must show that the defendant's "negligence was the proximate cause of the injury."[57] "[A] jury may not base its verdict on th[e] per se negligence unless it affirmatively appears that the statutory violation was a proximate cause of the injury for which recover is sought."[58] In this case, even if Plaintiff were to prove the first element, that Defendant violated §65-12-108, her claim must fail

---

[53] Tenn. Code Ann. § 65-12-108 (2).

[54] *Smith v. Owen*, 841 S.W.2d 828, 831 (Tenn. Ct. App. 1992).

[55] *Id.* (quoting *Nevill v. City of Tullahoma*, 756 S.W.2d 226, 232–33 (Tenn. 1988)).

[56] *Id.* (citing *Traylor v. Coburn*, 597 S.W.2d 319, 322 (Tenn. Ct. App. 1980)).

[57] *Id.* (citing *Brookins v. The Round Table*, 624 S.W.2d 547, 550 (Tenn. 1981); *Alex v. Armstrong*, 385 S.W.2d 110, 114 (Tenn. 1964)).

[58] *Biscan v. Brown*, 160 S.W.3d 462 (Tenn. 2005) (quoting *McIntyre v. Balentine*, 833 S.W.2d 52, 59 (Tenn. 1992)).

under the other two factors.

Plaintiff has not shown that she and Decedent were within the class of persons intended to be protected by the state statute or that Defendant's negligence was the proximate cause of the injury. The subsection of this statute which requires trains to sound their horns when approaching a crossing was "designed to prevent persons from entering upon the track."[59] In *Southern Railway Co. v. Simpson*, for example, the Tennessee Supreme Court held that the statute was inapplicable when a driver drove his automobile into the side of a train at a railroad crossing."[60] Because the purpose of the statute was to prevent people from entering upon the tracks, it did "not inure to the benefit of an automobile driver who willfully ran into the side of a train while standing on or passing over the crossing.[61] Likewise, the Court finds that the statute was not designed to protect trespassers crossing over the boxcars in the middle of the train. The statute was created to warn persons appearing in front of, not in the middle of, the train of the train's approach.

Furthermore, it was Plaintiff's and Decedent's negligence, and not Defendant's negligence that was the proximate cause of Decedent's death. Plaintiff and Decedent crossed between the boxcars of the stopped train by climbing over the coupling that connected the two cars. Plaintiff testified in her deposition that on other occasions, she witnessed a train that had stopped and then began to move again. Therefore, neither Plaintiff nor Decedent could be sure how long the train would remain stopped and knew that it could move at any time. Plaintiff

---

[59] *McCampbell v. Central of G. R. Co.*, 253 S.W.2d 763, 764 (Tenn. 1952).

[60] 261 S.W. 677 (Tenn. 1923). *See also McCampbell*, 253 S.W.2d at 764.

[61] *McCampbell*, 253 S.W.2d at 764 (citing *Tennessee C.R. Co. v. Page*, 282 S.W. 376, 378 (Tenn. 1925)).

further testified that she was aware before the night of the incident that climbing on a standing train was dangerous. In fact, she stated that her mother told her that it was dangerous. Additionally, Plaintiff testified that she could not see the head of the locomotive or the engines because the train was very long. Likewise, the crew members of Defendant's train testified that they did not see Plaintiff or Decedent. As discussed above, Defendant was not negligent in failing to ascertain the presence of Plaintiff and Decedent as a train is not required to inspect between the boxcars prior to beginning movement. Thus, the Court finds that the proximate cause of the injury was Plaintiff's and Decedent's own negligence, and the doctrine of negligence *per se* is inapplicable here.

### b. Memphis City Ordinances

In addition to the state statute, Plaintiff also alleges that Defendant violated two city ordinances. Defendant again asserts that it did comply with the ordinances, but that in any cases, the ordinances are preempted by the FRSA, and negligence per se does not apply. In *Krentz v. Consolidated Rail Corporation*,[62] the Pennsylvania Supreme Court held that a local blocked crossing statute was preempted by the FSRA.[63] The plaintiffs in *Krentz* alleged negligence *per se* based on the defendant railroad's violation of the local statute.[64] At the time of the accident at issue in the *Krentz* case, the defendant's train was stopped and blocking the crossing.[65] The defendant railroad argued that the local statute was preempted by the FRSA.[66] The *Krentz* court

---

[62] 910 A.2d 20 (Pa. 2006).

[63] *Id.* at 36.

[64] *Id.* at 31.

[65] *Id.*

[66] *Id.*

16

was persuaded by the section of the code in which the statute was codified which regulated railroads in particular.[67] Additionally, the court noted that the statute was applicable only to railroads and not to any other entity that might obstruct an intersection.[68] Thus, the court held that the FRSA covered the subject matter of the local statute.[69] Upon further analysis, the court found that the local statute was incompatible with the brake system regulations in the FRSA and was, therefore, preempted by the FRSA.[70]

Other courts have also found local blocked crossing statutes to be preempted by the FRSA. For example, in *CSX Transportation, Inc. v. City of Plymouth* ("*Plymouth I*"),[71] the Sixth Circuit held that a municipal ordinance that prohibited trains from obstructing a crossing for more than five minutes related to railroad safety and therefore was preempted by the FRSA. The court noted that "[a]nalysis of municipal ordinances under the FRSA preemption clause requires only a finding that the challenged ordinance is 'related to railroad safety,' not that the challenged legislation compels violation of or mirrors regulations promulgated under the authority of the FRSA."[72] Regarding the savings clauses in the FRSA, the court held that these exceptions only apply to *state* laws, regulations, and orders.[73] Because the regulation was a municipal ordinance,

---

[67] *Id.* at 35.

[68] *Id.* at 34.

[69] *Id.* at 35.

[70] *Id.* at 35–36.

[71] *Plymouth I*, 86 F.3d 626, 628–29 (6th Cir. 1996).

[72] *Id.* at 630.

[73] *Id.* at 628. *But see City of Seattle v. Burlington N. R.R.*, 41 P.3d 1169, 1173 (Wash. 2002) ((citing *Burlington N. R.R. v. City of Connell*, 811 F. Supp. 1459, 1464 (E.D. Wash. 1993) (finding that for purposes of the FRSA, municipal regulations should be treated the same as state regulations)).

17

rather than a state law, the court held that the ordinance did not fall within the FRSA's preemption clause exceptions.[74] In upholding the district court's granting of summary judgment, the court stated that the FRSA preempted the municipal ordinance because it was related to railroad safety.[75]

The Court finds that the FRSA covers the subject matter of the local ordinances. Like the statute in *Krentz*, the Memphis City Ordinances are codified under a section titled "Railroads and Railroad Crossings." Additionally, the plain language of the ordinances evidence that their effect is to regulate the movement of trains. As the Court finds the city ordinances are "related to railroad safety," they are expressly preempted by the FRSA. Furthermore, even if the ordinances were not preempted by the FRSA, negligence *per se* would be inapplicable here, for the same reasons set forth above. Specifically, even if Defendant had violated the city ordinances, Plaintiff's and Decedent's injuries were not the result of this violation, but were caused by their own negligence.

Under Tennessee law, in ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party.[76] The court may grant such a motion only if reasonable minds could not differ regarding the conclusions to be drawn from the evidence.[77] A question of fact on which reasonable minds may differ is a question for the jury

---

[74] *Id.*

[75] *Id.* at 630.

[76] *Shanklin v. Norfolk & S. Ry.*, 2001 U.S. Dist. LEXIS (W.D. Tenn.. Oct. 22, 2001) (quoting *Easton v. McLain*, 891 S.W.2d 587, 590 (Tenn. 1994)).

[77] *Id.*

18

and not an issue to be determined by the court as a matter of law.[78] In this case, Plaintiff has not presented facts which, in viewing the evidence in the light most favorable to her, show a genuine issue for trial. Consequently, summary judgment is appropriate.

## CONCLUSION

Based on the foregoing, Defendant's Motion for Summary Judgment is **GRANTED.**

**IT IS SO ORDERED.**

                                            **s/ S. Thomas Anderson**
                                            S. THOMAS ANDERSON
                                            UNITED STATES DISTRICT JUDGE

Date: June 11th, 2008.

---

[78] *Harrison v. Southern Ry. Co.*, 215 S.W.2d 31, 35 (Tenn. Ct. App. 1948).